IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAMIEN WILKINSON, :
:
        Petitioner, :
:
v. : Civil Action No.13-1847-RGA
:
DAVID PIERCE, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
:
        Respondents. :

## MEMORANDUM OPINION

Damien Wilkinson. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

January 26, 2015

*[signature]*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Damien Wilkinson ("Petitioner") has filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 3) The State filed an Answer in opposition. (D.I. 13) For the reasons discussed, the Court will deny the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

## I. BACKGROUND

The facts leading to Petitioner's conviction are set forth below, as summarized by the Delaware Supreme Court in Petitioner's direct appeal.

> In April 2008, C.W., her four children, her fiancé, Arturo Juarez, and her brother, [Petitioner], all lived in the same house in Richardson Park. At the time, C.W.'s daughter, C.B., was four years old. While living with his sister and her family, [Petitioner] occasionally babysat his nieces and nephews.
>
> On the afternoon of April 20, after coming home from work, C.W. observed C.B. making a motion of going in and out of her mouth with her right index finger, a gesture C.W. had never seen her make before. When C.W. asked her daughter "where she got that from," C.B. answered that "Uncle Day-Day makes her do that to him." (Uncle Day-Day was C.B.'s nickname for Petitioner.) C.W. asked C.B. "what else Uncle Day-Day makes her do," and C.B. answered that "he stuck his tail in her butt and squirted milk all over my bed." When Petitioner came home that evening, C.W. confronted him with C.B.'s statements. Petitioner became "shaky," and he started throwing up.
>
> The next day, C.W. reported the information to the New Castle County police. Officer Eric Sherkey collected the sheets, pillowcases, and comforter from C.W.'s bed and advised the family to seek immediate medical assistance at the A.I. DuPont Hospital for Children. Genetic testing of bodily fluids on the bedding could not exclude Petitioner as a contributor from the five samples tested. The probability that someone other than Petitioner was the contributor of that genetic material was 1 in 6,536,000,000,000,000,000 (quintillion).
>
> On April 28, C.B. was given a multi-disciplinary evaluation at the Children's Advocacy Center ("CAC"), triggered by the report of sexual abuse. The evaluation consisted of an interview by Terry Kaiser and a medical examination by Allan DeJong, M.D. During her interview, C.B. told Kaiser that [Petitioner] made her "get the milk out," and that the "milk" went on "Mommy's bed." (Through the use of anatomical drawings, Kaiser determined that C.B. used the

term "butt" to describe her vagina, and a "tail" to describe a penis.) Dr. DeJong found no signs of recent injury to the genital or anal area.

On May 1, Officer Sherkey and Detective Karen Crowley interviewed Wilkinson. He was advised of his *Miranda* rights and signed a waiver form. He denied the alleged activity. On June 20, 2008, Petitioner was arrested and later charged with two counts of rape in the first degree under 11 Del. C. § 773(a)(5)), and two counts of rape in the first degree under 11 Del. C. § 773(a)(6).

*Wilkinson v. State*, 979 A.2d 1111 (Table), 2009 WL 2917800, at *1 (Del. Sept. 14, 2009).

The State *nolle prossed* two counts of rape prior to the start of trial. In February 2009, a Superior Court jury found Petitioner guilty of both remaining counts of rape in the first degree. *Id.* at *2. On April 3, 2009, Petitioner was sentenced to a total of fifty-five years at Level V, suspended after serving fifty years for two years at Level IV, suspended in turn after six months for one year and six months at Level III. *Id.* Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentence on September 14, 2009. *Id.*

On January 14, 2010, Petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 3 at 32-35) The Superior Court denied that Rule 61 motion on April 29, 2010. (D.I. 3 at 42-49) Petitioner filed a notice of appeal from that decision, but voluntarily dismissed the appeal on August 5, 2010. (D.I. 3 at 59-61)

Petitioner filed a second Rule 61 motion on February 18, 2011. (D.I. 3 at 63-77) On January 3, 2012, a Delaware Superior Court Commissioner issued a Report and Recommendation that Petitioner's second Rule 61 motion be denied. (D.I. 15, Del. Super. Ct. Crim. Dkt. Entry No. 43) The Superior Court adopted that Report and Recommendation on May 21, 2012, and denied the Rule 61 motion. (D.I. 3 at 89-92) The Delaware Supreme Court affirmed that decision on December 17, 2012, and denied rehearing on January 15, 2013. *See*

3

*Wilkinson v. State*, 70 A.3d 207 (Table), 2012 WL 6597844 (Del. Dec. 17, 2012), *reh'g denied,* (Jan. 15, 2013).

The instant Petition is dated October 29, 2013, and was docketed on November 5, 2013. It alleges ineffective assistance of counsel. The State contends that the Court should deny the Petition as time-barred.

## II. ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Here, Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). As such, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety days after the state appellate court's decision. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Supreme Court affirmed Petitioner's convictions and sentence on September 14, 2009, and he did not file a petition for a writ of certiorari in the United States Supreme Court. As a result, his conviction became final for the purposes of § 2244(d)(1) on December 14, 2009.

In order to comply with the one-year limitations period, Petitioner had to file the instant Petition by December 14, 2010. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005). Petitioner did not file this § 2254 Petition until October 29, 2013,[2] almost three full years after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of

---

[2]Pursuant to the prisoner mailbox rule, the Court adopts as the filing date October 29, 2013, which is the date on the Petition. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

5

AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Petitioner properly filed his first Rule 61 motion on January 14, 2010. At this point in time, thirty days of AEDPA's limitations period had already expired. The first Rule 61 motion tolled the limitations period through August 5, 2010, the date on which Petitioner voluntarily dismissed his first post-conviction appeal. The limitations clock started to run again on August 6, 2010, and ran another 196 days until Petitioner filed his second Rule 61 motion on February 18, 2011. The second Rule 61 motion tolled the limitations period from February 18, 2011 until January 15, 2013, the date on which the Delaware Supreme Court denied Petitioner's petition for re-hearing from its affirmance of the Superior Court's denial of Petitioner's second Rule 61 motion. The limitations clock started to run again on January 16, 2013, and ran the remaining 139 days without interruption until the limitations period expired on June 4, 2013.

Thus, even with the statutory tolling triggered by Petitioner's first and second Rule 61 motions, Petitioner filed the instant Petition approximately five months too late. Accordingly, the Petition must be dismissed as time-barred, unless equitable tolling is available.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560

6

U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahoney*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

In this case, Petitioner contends that the limitations period should be equitably tolled pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), primarily because he is alleging that trial counsel provided ineffective assistance. By their own terms, the *Martinez* and *Trevino* decisions provide a petitioner with an opportunity to overcome the **procedural default** of a claim asserting ineffective assistance of trial counsel, but do not in any way impact a petitioner's obligation to comply with AEDPA's limitations period. Therefore, Petitioner's reliance on these two cases is misplaced, and his argument does not trigger equitable tolling.

To the extent Petitioner's citation to *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) should be liberally construed as attempt to trigger equitable tolling on the basis of his "actual innocence," the attempt is unavailing. (D.I. 18 at 1) To succeed on this argument, Petitioner must present a credible claim of actual innocence based on "new reliable evidence . . . that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his

7

factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Here, Petitioner merely alleges that *McQuiggin* permits a federal habeas court to invoke the "miscarriage of justice" exception to justify consideration of claims that were procedurally defaulted in state court, but he does not provide any new reliable evidence of his actual innocence. As such, the Court concludes that Petitioner's vague and unsupported *McQuiggin* argument does not warrant equitable tolling.

Finally, to the extent Petitioner's untimely filing was the result of his own miscalculation of the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

For all of these reasons, the Court concludes that that the equitable tolling doctrine does not apply in this case. Accordingly, the Court will dismiss the instant Petition as time-barred.[3]

## III. PENDING MOTION

During the pendency of this proceeding, Petitioner filed a Motion to Appoint Counsel. (D.I. 20) Having already concluded that the Petition is time-barred, the Court will deny the Motion as moot.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A federal court denying a habeas petition on procedural grounds without reaching the underlying constitutional claims is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid

---

[3] Given its determination that the Petition is time-barred, the Court will not address the State's alternate reason for denying the Petition.

8

claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied as time-barred. An appropriate Order will be entered.